**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| DEBORAH CARR, on Behalf of Herself And All Others Similarly Situated ) ) | Case No: |
| Plaintiffs, ) ) | Judge: |
| v. ) ) | |
| APPLE, INC., ) c/o CT Corporation System ) 818 West Seventh Street ) Los Angeles, CA 90017 ) ) | **COMPLAINT—CLASS ACTION** **DEMAND FOR JURY TRIAL** |
| And ) ) | |
| AT&T MOBILITY, L.L.C. ) c/o CSC Lawyers Incorporating ) Service Company ) 221 Bolivar Street ) Jefferson City, MO 65101 ) ) | |
| Defendants. ) **)** | |

-1-

Plaintiff, Deborah Carr ("Plaintiff"), brings this action on behalf of herself and all others similarly situated against defendants Apple, Inc. and AT&T Mobility, L.L.C. (collectively, "Defendants"), and states:

## JURISDICTION AND VENUE

1. This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum of value of $5,000,000 and is a class action in which members of the Class of plaintiffs are citizens of different states different from Defendants. Further, greater than two-thirds of the Class members reside in states other than the state in which Defendants are citizens.

2. Venue is proper in this court pursuant to 28 U.S.C. § 1391 on that many of the acts and transactions giving rise to this action occurred in this District because Defendants:

   (a) is authorized to conduct business in this District and has intentionally availed itself of the laws and markets within this District through the promotion, marketing, distribution and sale of its products in this District;

   (b) does substantial business in this District; and

   (c) is subject to personal jurisdiction in this District.

## NATURE OF THE ACTION

3. In January 2007, the iPhone was launched. The iPhone was manufactured and created by Defendant Apple. The iPhone is a PDA/smart phone. It is a combination of an iPod (which stores thousands of music files and plays them back for the listener), a cellular phone (which allows users to talk on the telephone while mobile) and a personal digital assistant that allows, among other things, the transmission of emails and data. The cell phone and data transmission function of the iPhone works exclusively with the AT&T cellular phone

network. Defendants Apple and AT&T launched the iPhone as a joint venture. Both AT&T and Apple sold the iPhone in their respective stores.

4. The original version of the iPhone was called the "2G." The next generation, launched in July 2008, was called the "3G." The most recent version, launched in June 2009, is called the "3G-S."

5. Since its creation, one flaw of the original 2G iPhone was that it did not allow "Multimedia Messaging Service," or "MMS," which, among other things, allows users to send a picture to another user's cell phone.

6. Apple advertised heavily that the new version of iPhone, the 3G, as well as the even newer version, the 3G-S, would allow MMS. Apple's print and video advertisements in on television, the Internet, the radio, newspapers, and direct mailers all touted the availability of MMS.

7. Similarly, AT&T advertised that the 3G and 3G-S would allow MMS. MMS functionality was one of the reasons people chose to buy or upgrade to a 3G or 3G-S.

8. MMS has been available on other types of cell phones for many years.

9. From Apple's website:

> *Send MMS*
>
> *Take a photo or shoot some video, then send it via Messages. You can also send audio recordings from within Messages, information from Contacts, and directions from Maps.*

10. A Pop-Up window on Apple's website reads:

> Sending Photos and Videos
>
> You can take a photo or make a video (iPhone 3GS only) from within Messages and include it in your conversation with another MMS-capable device.

11.  From AT&T's website:

> Messages
>
> Use messages to send text, photos, audio, video, and more. Forward a whole message or just the important parts.

12.  After the 3G iPhone came out in July 2008, customers who purchased the 3G iPhone began to realize that MMS was not available.

13. In response, AT&T published this in the AT&T Answer Center page of their website for problems related to MMS:

> Customers who are sent a MMS message and own a non-MMS capable device will receive a text message instead of an actual MMS message. The message will contain the website address of www.viewmymessage.com/1 or www.viewmymessage.com/2 as well as a user name and password. To view the MMS message, please access the website from a computer and enter the user name and password provided in the text message.

14.  Incredibly, AT&T was directing customers interested in MMS to go to a computer to view the message.

15.  The AT&T Answer Center has this unhelpful solution for the problem "Send, Receive, or Delete a Picture, Audio, or Video Multi-Media Message (MMS) with iPhone":

> *Goal: Send, Receive, or Delete a Picture, Audio or Video Multi-media Message with iPhone*
>
> *Symptom: Unable to Send, Receive, or Delete a Picture, Audio, or Video Multimedia Message with iPhone*
>
> *Fix: iPhone does not support sending, or receiving picture, audio, or video multimedia messages. If an MMS is sent to the iPhone, it will receive a text message instead that contains a link to a website address where the message can be viewed.*

The "Fix" was essentially to say "tough luck."

16.  In early 2009, sales representatives for both Apple and AT&T represented that MMS would be available on both the 3G and the 3G-S beginning on June 17, 2009, when the

-4-

new iPhone OS 3.0 Software Update would become available. Representatives in Apple and AT&T stores assured customers that with this new application, which could be downloaded for free, MMS would be available.

17. In the spring of 2009, AT&T began a huge sales drive to sell its older 3G models in preparation for the launch of 3G-S. AT&T lowered the price of a 3G to less than $100 and assured customers that the new 3.0 Software Upgrade would solve all their problems.

18. Apple posted on its website, on the "iPhone OS 3.0 Software Update" page, that MMS would be available, so that customers could "send MMS messages and include photos, audio, and contact info. Even tap to snap a picture right inside Messages." A graphic showed the familiar iPhone test message bubbles with a picture inserted.

19. Millions of customers, as a result of the false and deceptive representations and concealments of Apple and AT&T purchased the 3G and 3G-S, waiting for the wonderful day in June 2009 when the new application would be available which would allow MMS.

20. Unfortunately, after downloading the new 3.0 Software Update application, MMS still did not work on both the 3G and 3G-S.

21. The Apple troubleshooting page explained the problem:

> To send and receive MMS messages on your iPhone 3G, do the following:
>
> 1. Verify that your iPhone and wireless carrier meet the system requirements. To use MMS you need:
>
>   --iPhone OS 3.0 installed on iPhone 3G. The original iPhone does not support sending or receiving MMS messages. Install iPhone OS 3.0 if necessary.
>   --A wireless carrier that supports MMS.
>   --A coverage area in which you can place and receive a call, and access the Internet using Safari on your iPhone (3G network coverage recommended).
>
> 2. If this article shows that your carrier supports MMS, you should see MMS Messaging in the Settings>Messages>General screen as shown below.

22. The "this article" phrase was a blue-colored hyperlink. Clicking on that hyperlink leads to a page showing several countries. Clicking on North America, and viewing the graph for USA, under the heading "AT&T" it shows that AT&T is NOT a carrier which offers MMS. Of course, AT&T is the ONLY carrier in the United States used by the iPhone.

23. In other words, AT&T's towers do not support MMS. In an article in the St. Louis Countian, AT&T spokesman Marty Richter admitted that AT&T does not support MMS for the iPhone.

24. Calling Apple Customer Support reveals that AT&T has never upgraded its towers so as to support the functionality necessary for MMS. Therefore, the iPhone cannot offer MMS as claimed.

25. The only excuse offered by AT&T and Apple is a mouseprint disclaimer on the website, in barely readable font, which reads "MMS Support from AT&T coming in late summer."

26. None of the materials in either the Apple or AT&T stores advise consumers that the MMS functionality of the phones will only work after the AT&T towers are upgraded to support MMS in "late summer."

27. When and if AT&T upgrades its towers, the millions of iPhone purchasers will get what they should have in terms of MMS capability. In the meantime, all the millions of purchasers of the 3G and the 3G-S iPhone have been deceived by the Defendants as to the phone, which in fact does not currently have MMS functionality.

28. Apple and AT&T representatives continue to misrepresent and/or conceal, suppress, or omit material facts to customers in their stores about the MMS functionality of the 3G and 3G-S iPhones.

## PARTIES

29. Plaintiff Deborah Carr, a resident of Cuyahoga County, Ohio, bought her iPhone in December, 2008 at the AT&T store located at 27139 Chagrin Blvd., Woodmere, Ohio 44122.

30. Plaintiff was interested in a phone with MMS functionality.

31. Plaintiff asked the store representative if the iPhone provided MMS.

32. The store representative misrepresented and/or concealed, suppressed, or omitted facts as to the iPhone and MMS functionality.

33. Plaintiff purchased the 3G iPhone.

34. When the 3.0 Software Upgrade became available, Plaintiff downloaded it.

35. Despite the download, MMS still did not work.

36. Plaintiff never saw the microprint disclaimer about "AT&T Support for MMS coming in late summer" on the Apple or AT&T websites.

37. Plaintiff has been damaged in that for many months he has been unable to send MMS messages.

## CLASS ACTION ALLEGATIONS

38. Plaintiff brings this lawsuit on behalf of her/himself and the proposed Class members under Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure. The proposed Class consists of:

> All residents of Ohio who, between July 1, 2008 and the date of final judgment or settlement, have purchased a 3G or 3G-S iPhone from either AT&T Mobility L.L.C. or Apple, Inc. for personal, family, or household use.

39. Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint. Specifically excluded from the proposed Class are the defendant, its

officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by the defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with the defendant and/or its officers and/or directors, or any of them; the Judge assigned to this action, and any member of the Judge's immediate family.

40. *Numerosity*. The members of the Class are so numerous that their individual joinder is impracticable. Plaintiff is informed and believes, and on that basis alleges, that the proposed Class contains many thousands of members. The precise number of Class members is unknown to Plaintiff. The true number of Class members are known by the defendant, however, and thus, may be notified of the pendency of this action by first class mail, electronic mail, and by published notice.

41. ***Existence and Predominance of Common Questions of Law and Fact***. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

*Factual Questions:*

(a) did the Defendants know that AT&T had not upgraded its towers to support MMS, and, if so, when did they gain this knowledge;

(b) did the Defendants know that most customers viewed MMS as an important functionality;

(c) did the Defendants conceal from consumers that: (1) AT&T had not upgraded its towers to support MMS and had no plans to do so for many months; and (2) the 3.0 Software Upgrade would not fix the problem and make MMS available (by itself);

(d) were Defendants aware of alternative methods of disclosure which would have more adequately warned customers of the unavailability of MMS and the reason for the non-availability of MMS;

(e) did the Defendants market and advertise their 3G and 3G-S phones as supporting MMS with no mention, or little mention, of the fact that AT&T towers were not equipped to support MMS;

(f) do the salespersons at Apple and AT&T have any scripts or training materials which would provide them with knowledge or information as to the fact that AT&T towers do not support MMS, or any advice as to when the towers will support MMS;

(g) according to Apple's and AT&T's marketing research, is MMS functionality an important decision driver for residential consumers when buying iPhones;

(h)  when will AT&T have finished its tower upgrade;

(i) did any officials from AT&T or Apple believe that the advertisements to customers relating to MMS were misleading to consumers;

(j) did AT&T or Apple receive complaints from consumers about the lack of MMS functionality, and what was their response;

(k) what did Defendants tell their own managers and employees internally about MMS functionality;

(l) were any committees or work groups created to solve the MMS problem, and what was said in their meetings;

(m) why don't Apple and AT&T tell customers the truth about MMS when the customer is buying the product in the store; and

(n) other fact questions.

*Law Questions:*

(a) did the Defendants engage in an unfair practice in connection with the sale or advertisement of merchandise under the CSPA and ODTPA when they represented to Ohio consumers that their iPhones would have MMS functionality;

(b) did the Defendants employ any deception, fraud, false pretense, false promise, or misrepresentation, in connection with the sale or advertisement of merchandise under the CPSA and ODTPA when they represented to Ohio consumers that their iPhone would have MMS functionality;

(c) did the Defendants employ any deception, fraud, false pretense, false promise, or misrepresentation, in connection with the sale or advertisement of merchandise under the CSPA and ODTPA when they represented to Ohio consumers that the 3.0 Software Upgrade would allow their iPhones to have MMS functionality?

(d) did the Defendants conceal, suppress, or omit material facts when they failed to reveal to consumers that: (a) the towers of AT&T—the exclusive phone network for the iPhone--did not support MMS functionality; (b) AT&T would not have the towers upgraded for many months; and (c) the 3.0 Software Upgrade would not, by itself, solve the problem;

(e) to what extent and in what amount were Plaintiffs and the Class damaged by Defendants' unlawful actions?

(f) does the Defendants' conduct constitute such intentional and outrageous conduct so as to subject the Defendants to an award of punitive damages under the CSPA and ODTPA?

(g) do the Defendants have affirmative defenses which are common to all class members?

and

(h) other legal questions.

42.     *Typicality*.  Plaintiff's claims are typical of the claims of the members of the Class in that the defendant was unjustly enriched as a result of Plaintiff's and the Class's respective purchases of IPhone 3G and 3G-S.

43.     *Adequacy of Representation*.  Plaintiff will fairly and adequately protect the interests of the members of the Class.  Plaintiff has retained counsel highly experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously.  Plaintiff has no adverse or antagonistic interests to those of the Class.

44.     *Superiority*.  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against the defendant.  It would thus be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done to them.  Furthermore, even if Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

45. Unless a class is certified, defendant will retain monies received as a result of its conduct that was taken from Plaintiff and proposed Class members.

## COUNT I

### For Violations of Ohio Consumer Sales Practices Act, Ohio Revised Code §1345, *et. seq*.

46. Plaintiff restates each and every paragraph of this Complaint as if fully set forth herein.

47. This cause of action is brought pursuant to Ohio's Consumer Sales Practices Act, Ohio Revised Code §1345, *et seq.* (the "CSPA").

48. Plaintiff is a consumer as defined by Ohio Revised Code §1345.01(D).

49. Defendants are a supplier as defined by Ohio Revised Code §1345.01(C).

50. Defendants' conduct described herein involves consumer transactions as defined in Ohio Revised Code §1345.01(A)

51. Defendants violated the CSPA by engaging in the following practices proscribed by the following subsections of Ohio Revised Code §1345.02 in consumer transactions with the Plaintiff and the Class, which were intended to result in, and did result in, the sale of iPhone 3G and G-S:

(A) by "commit[ting] an unfair or deceptive act or practice in connection with a consumer transaction";

(B)(1) by representing that the products have "performance characteristics . . . uses, or benefits that [they] do[] not have";

(B)(2) by representing that the products are "of a particular standard, quality, grade, style [or] prescription" when they are not; and

(B)(5) by representing that the products are being "supplied in accordance with a previous representation," when they are not.

52. Pursuant to Ohio Adm. Code 109:4-3-10(A) (Substantiations of Claims In Advertising) It shall be a deceptive act or practice in connection with a consumer transaction for a supplier to:

> Make any representations, claims, or assertions of fact, whether orally or in writing, which would cause a reasonable consumer to believe such statements are true, unless, at the time such representations, claims, or assertions are made, the supplier possesses or relies upon a reasonable basis in fact such as factual, objective, quantifiable, clinical or scientific data or other competent and reliable evidence which substantiates such representations, claims, or assertions of fact . . . .

53. In conjunction with the violations of Ohio Revised Code §1345.02 set forth above, Defendants violated Ohio Adm. Code §109:4-3-10 because it cannot and has not substantiated the advertising claims made in connection with the promotion of IPhone 3G and 3G-S.

54. Defendants further violated the CSPA by engaging in the following practices proscribed by the following subsections of Ohio Revised Code §1345.03 in consumer transactions with the Plaintiff and the Class, which were intended to result in, and did result in, the sale of IPhone 3G and 3G-S:

(A) Defendants have engaged and are engaging in "an unconscionable act or practice in connection with a consumer transaction;

(B)(3) Defendants "knew at the time the consumer transaction was entered into of the inability of the consumer to receive a substantial benefit from the subject of the consumer transaction"; and

(B)(6) Defendants "knowingly made a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment."

55. Defendants violated the CSPA and Ohio Administrative Code through its advertisements for iPhone 3G and 3G-S as described above when it knew, or should have

-13-

known, that the representations and advertisements were unsubstantiated, false and misleading.

56. Pursuant to Ohio Revised Code §1345.09(A), Plaintiff and the Class are entitled to rescind the consumer transactions or recover damages or other appropriate relief under Rule 23 of the Federal Rules of Civil Procedure.

57. In addition, Ohio Revised Code §3715.52 prohibits the following acts or causing the following acts: the sale of any food that is misbranded, the misbranding of any food, and the dissemination of any false advertisement, which is defined in Ohio Revised Code §3715.68 as an advertisement of food that is false or misleading in any manner.

58. Ohio Revised Code §3715.52 and §3715.60 provided further notice to Defendants that mislabeling, misbranding, disseminating false advertising in connection with the sale of a food product was and is a violation of Ohio law.

59. Pursuant to Ohio Revised Code §1345.09(D), Plaintiff and the Class seek an order enjoining the above-described wrongful acts and practices of the Defendants and for restitution and disgorgement.

60. Pursuant to Ohio Revised Code §1345.09(E), this Complaint will be served upon the Ohio Attorney General, Richard Cordray.

## COUNT II

### For Violations of Ohio's Deceptive Trade Practices Act
### Ohio Revised Code §4165, *et seq.*

61. Plaintiff restates each and every paragraph of this Complaint as if fully rewritten herein.

62. Defendants is a person as defined in Ohio Revised Code §4165.01(D).

63. For the reasons discussed above, Defendants has engaged in unfair, deceptive, untrue and misleading advertising in violation of the following subsections of Ohio's Deceptive Trade Practices Act §4165.02 because Defendants:

(A)(3) "Causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods . . .";

(A)(4) "Uses [and has used in the past] deceptive representations . . . in connection with goods";

(A)(7) "Represents that goods . . . have sponsorship, approval, characteristics, ingredients, uses [or] benefits . . . that they do not have . . .";

(A)(9) "Represents that goods . . . are of a particular standard, quality, or grade" and "they are of another"; and

(A)(11) "Advertises goods . . . with intent not to sell them as advertised."

64. Defendants' conduct caused substantial injury to Plaintiff and the other Class members. Plaintiff has suffered injury in fact and has lost money as a result of Defendants' deceptive conduct.

65. Plaintiff and the Class seek equitable relief and to enjoin Defendants on the terms that the Court considers reasonable.

## COUNT III

### Breach of Contract
### On Behalf of Plaintiff and the Class

66. Plaintiff restates each and every paragraph of this Complaint as if fully rewritten herein.

67. The affirmation of fact and/or promises related to the benefits of iPhone 3G and 3G-S are part of a standardized contract between Plaintiff and the members of the Class and Defendants.

68. Plaintiff and the Class members performed all conditions precedent under the contract between the parties.

69. Defendants breached the terms of the contract between the parties related to the benefits of iPhone 3G and 3G-S with Plaintiff and the Class by not providing iPhone 3G and 3G-S in a manner that conforms to the affirmations and/or promises.

70. Defendants' breach of this contract has directly and proximately caused Plaintiff and the Class to suffer damages in the amount of the purchase price of iPhone 3G and 3G-S.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment:

A. Certifying the Class as requested herein;

B. Awarding Plaintiff and the proposed Class members damages;

C. Awarding restitution and disgorgement of Defendants' revenues to Plaintiff and the proposed Class members;

D. Awarding declaratory and injunctive relief as permitted by law or equity, including enjoining defendant from continuing the unlawful practices as set forth herein, and directing defendant to identify, with Court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by defendant by means of any act or practice declared by this Court to be wrongful;

E. Awarding Plaintiff and the Class punitive damages;

F. Ordering Defendants to engage in a corrective advertising campaign;

G. Awarding attorneys' fees and costs; and

H. Providing such further relief as may be just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

DATED:  August 26, 2009

                                             Respectfully submitted,

                                             **SCOTT KALISH CO., L.L.C.**

                                             */s/ D. Scott Kalish*
                                             D. SCOTT KALISH (0063002)
                                             1468 West 9th Street, Suite 405
                                             Cleveland, Ohio  44113
                                             Telephone: 216/502-0570
                                             scottkalishcollc@cs.com

                                             Attorney for Plaintiffs